## Case No. 17,568.

### WHITELY v. SWAYNE.

[4 Fish. Pat. Cas. 117.] [1]

Circuit Court, S. D. Ohio. Feb., 1865.[2]

PATENT FOR INVENTION — PRESUMPTION AS TO VALIDITY—REISSUED PATENT—OATH OF PATENTEE.

1. It would be straining the doctrine of presumptions in favor of the legality of the acts of a public officer to an unreasonable extent, to hold that a patent is legal and valid where the records and papers of the office show conclusively that essential statutory provisions had been disregarded.

[Cited in Poage v. McGowan, 15 Fed. 399.]

2. An oath that an original patent "is not fully valid and available" to the patentee, is not such an oath as is required by law, and it was an excess of authority on the part of the commissioner to grant a reissued patent upon such an oath.

3. Whether the oath of an assignee to the specification accompanying an application for a reissue, while the patentee is alive and able to verify, is a compliance with the statute, quære?

4. If by the elastic or expansive power of a reissue, machines are made infringements, not a single element of which was described in the original, it is an abuse of the right of reissue equivalent to a positive fraud.

This was a bill in equity [by William N. Whitely against William Swayne] filed to restrain the defendant from the infringement of letters patent [No. 10,967] for an "improvement in clover and grass-seed harvesters," granted to Thomas S. Steadman, May 23, 1854; assigned to complainant and reissued to him in two divisions, June 19, 1860 [Nos. 985 and 986].

S. S. Fisher, for complainant.

D. Wright, for defendant.

1 [Reported by Samuel S. Fisher. Esq., and here reprinted by permission.]

2 [Affirmed in 7 Wall. (74 U. S.) 685.]

LEAVITT, District Judge. This is a bill in equity, brought by William N. Whitely, for an alleged infringement of reissued patents 9&5 and 986, dated June 19, 1860, granted to Whitely as the assignee of T. S. Steadman. The patent to Steadman is dated May 23, 1854, and purports to be for "a new and useful improvement in clover and grass-seed harvesters." The infringement alleged is in vending a machine known as the "Kirby Harvester," patented to William A. Kirby and David M. Osborne, assignees of Byron Densmore, on February 10, 1852. The bill prays for an injunction restraining the defendant from the sale of the Kirby harvester, and for an account of profits arising from the infringement complained of. The allegations of the bill are general as to the infringement, and there is no statement or specification of the parts or elements of the machine sold by the defendant, which infringe the machine described in said reissued patents.

The amended answer of the defendant sets up three several grounds of defense to the bill, which are in substance: (1) That the said reissued patents under which the complainant claims, are void as having been granted without a compliance with the prerequisites of the patent laws, and also for fraud in their procurement. (2) That the improvements claimed by Steadman in his patent, and by the complainant as embraced in the reissues, are not new, but had been patented and known to others, and in use, prior to the date of Steadman's patent. (3) That the machines sold by defendant do not infringe any of the devices described and claimed by Steadman as his invention, or covered by the reissues to Whitely as his assignee.

The legality and validity of these reissues will first be considered. If they are successfully impeached on either of the grounds stated, the complainant's bill can not be sustained, and there will be no necessity for passing on the questions of novelty and infringement.

The intelligent consideration of the character, force, and effect of these reissues, requires some reference to the history of Steadman's invention, as presented by the proofs and exhibits before the court. These show that on June 13, 1852, Steadman filed a caveat in the patent office in which he claims to have discovered some new and useful improvement in a machine for "harvesting clover and grass seed." The main element of the invention claimed was a device or mechanical arrangement for raising and lowering the main frame or box, with the cutting apparatus, while the machine was in operation, without interfering with the meshes of the system of cog-wheels used as a part of the machinery.

On February 5, 1853, Steadman filed a formal application for a patent for the improvements claimed as his invention. In this application the name of the machine is the same as in the caveat. On February 2, 1854, the commissioner of patents returned the papers to Steadman, with a letter informing him that his application had been rejected. The reasons for the rejection do not appear. On February 23, Steadman by letter withdrew his application, and at the same time transmitted a new application, which was filed in the patent office, March 4, 1854. The name of his invention was the same in this application as in that previously filed, namely: "New and useful improvements for harvesting clover and grass seed." The specification accompanying the second application differs in some important particulars from the first. He states his claims under the new application as follows: (1) The arrangement of the cutters in combination with the comb, operating in the manner and for the purpose described; (2) the rake S, in combination with the cutters, as described; (3) certain levers or pulleys arranged for raising or lowering both sides of the machine when in motion, and by which the ground wheels are retained in their place while the box is passing over stones and other obstructions.

On April 14, 1854, the commissioner of patents returned these specifications for correction. By a letter of that date, Steadman is informed that his third claim is rejected, for the reason that he had been anticipated in all the devices claimed in it as new, and that they had been patented to other inventors. The third claim was therefore erased; and on May 23, 1854, a patent issued embracing only the first and second claims, as before set forth.

These are all the facts which it is important here to notice in connection with the emanation of Steadman's patent. And here it will be proper to notice the evidence before the court, as to the operation and practical value of the machine thus patented to Steadman. The witness on this subject is Frederick Hatch, who lived in the same town, in the state of New York, in which Steadman resided, and who was familiar with the progress of his invention, and who states fully the various modifications and improvements made by Steadman in his machine prior to the date of his patent. He lived in the immediate vicinity of Steadman's shop, and was frequently in it, witnessing his efforts to perfect his machine. The first machine made by Steadman, the witness thinks, was in the year 1850. He made two others, the last in 1853 or 1854. The witness does not say positively that the last one was made after the patent issued, but the inference is strong, from all the facts stated, that it was so made. He states that he was an eye-witness to the practical working of the machine last made. It was used in his father's field in gathering clover seed, but was a failure for that purpose. It took off only about half the heads of clover, much of which flew over the box of the machine. The witness also states that the machine was not so constructed as to run on the ground, and was designed simply to take off the heads of clover, and that he had no knowledge that it was used for any other purpose. He states also, that the three

machines made by Steadman were sent to different places, and he does not know what became of them. There is no evidence before the court that they were used, or could be used, as practical implements for harvesting clover and grass seed; nor is it claimed by the complainant that they were available for that purpose.

The fact next to be noticed in the history of this patent is the application to the patent office by the complainant, as the assignee of Steadman, for a reissue based on that patent. His petition for this purpose was filed April 2, 1860, nearly six years after the date of Steadman's patent. He asks to be allowed to surrender that patent, and that three new letters patent may issue to him for separate parts of the invention.

He recites in the petition, that letters patent were granted to Steadman, May 23, 1854, "for improvements in harvesting machines," and that they were assigned to him December 27, 1859. This petition was accompanied by a specification dated March 27, 1860, signed by complainant in the presence of two witnesses, and sworn to before a justice of the peace in the state of Ohio. There are some peculiarities connected with this application and specification, and the action of the patent office in relation to them, which deserve special notice as bearing upon the question of the legality of the reissues to the complainant, and the allegation of unfairness or fraud in obtaining them. Copies of these papers are among the exhibits in the case, duly authenticated by the certificate of the commissioner and the seal of the patent office. In connection with these papers, the deposition of Homer Peck, then an examiner in the office, who passed upon the application of the complainant, is also before the court. From these it appears the examiner was so fully satisfied that the description of the improvements alleged to have been the invention of Steadman, as contained in the complainant's specification first filed, involved such a departure from the original invention and claim, that he ordered the whole to be stricken out, and a specification entirely new to be filed. A copy of this specification, as canceled by the examiner, is among these exhibits. I do not propose, nor is it necessary for the purpose of the inquiry now before the court, to recite this specification and claim. It is of great length, and details with great minuteness, the invention for which the complainant sought for a reissue. One fact, however, may be noted as very significant, that in this specification the complainant persisted in calling Steadman's invention an improvement in "harvesting machines." The witness, Peck, states very fully in his deposition the reasons for the rejection of the complainant's specification. He objected to the title of "harvesting machines," by which Steadman's improvement was designated by the complainant, and required the name given by Steadman, namely,

"an improvement in clover and grass-seed harvesters," to be used. He gives as the reason for this, "that the machine was so constructed as to be incapable of the functions of harvesting grass or grain as a reaping or mowing machine." The witness states very minutely various other terms and forms of expression used by the complainant in his first specification, as wholly inadmissible, and not within the scope or meaning of the improvements as claimed and patented to Steadman. It may be noticed here, that the witness, Peck, states distinctly, in answer to a question put to him, that the machine described by Steadman could not be successfully used as a reaper or mower, and he gives very clear reasons as the basis of this opinion.

As before stated, so decisively objectionable were the specification and claim of the complainant as embracing an entirely different invention from that patented to Steadman, that the whole was stricken out and canceled, except the name of the complainant subscribed to the specification, and the names of the attesting witnesses. And on June 4, 1860, a new specification was filed by the complainant as a substitute for the original, which was not sworn to by the complainant, or attested by witnesses. Upon this new specification and the claims appended to it, the reissued patent 985 was finally granted by the commissioner. I do not propose here to notice the description of the improvement, or the specific claims on which this patent issued. Nor is it necessary to notice separately the facts connected with reissue 986 as a part of the history of the patents under which the complainant claims. They are essentially the same as those referred to in connection with reissue 985. And all the legal grounds of objection apply equally to both.

The points of inquiry on the facts before the court, as already stated, are: (1) Whether the statute on the subject of reissued patents in all its material requirements has been complied with. (2) Whether these reissues were unfairly or fraudulently obtained.

The 13th section of the patent act of 1836 [5 Stat. 122], provides: "That whenever any patent which has heretofore been granted, or which shall hereafter be granted, shall be inoperative or invalid by reason of a defective or insufficient description or specification, * * * if the error has or shall have arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, it shall be lawful for the commissioner, upon the surrender to him of such patent, * * * to cause a new patent to be issued to the said inventor, for the same invention, for the residue of the period, then unexpired, for which the original patent was granted, in accordance with the patentee's corrected description and specification." A subsequent part of the section declares that in case of the death of the patentee, or an assignment of the original pat-

ent, the right to surrender and to a reissue shall vest in the executor, administrator, or assignee.

The points of inquiry before the court, as already stated, are: (1) Whether the essential requirements of the statute as to the reissues have been complied with. (2) Whether the inference of unfairness or fraud in obtaining the reissues, is sustained by the facts.

As to the first of these inquiries, it is insisted by the counsel for the complainant, that the decision of the commissioner of patents in granting the reissues is conclusive, and that the court can not look into any thing that transpired antecedently to the grant, to impeach the validity of the reissued patent. This is undoubtedly the settled law in this country, so far at least as the identity of the original invention, and the invention as described and claimed in the application for the reissue, unless fraud in the transaction is alleged. The commissioner is supposed to have all the qualifications necessary to an intelligent decision of that question, and there are strong reasons why his action should be regarded as final. Such, I understand to be the doctrine of the supreme court of the United States, as announced in numerous reported cases. [Stimpson v. Westchester R. Co.] 4 How. [45 U. S.] 404; [O'Reilly v. Morse] 15 How. [56 U. S.] 62; [Battin v. Taggert] 17 How. [58 U. S.] 84; Law's Dig. 617. But I am not aware that the supreme court have decided in any case that it is not competent to inquire whether the commissioner has exceeded his authority in granting a patent without a compliance with the requirements of the statute. He has clearly no power to dispense with what the statute declares to be necessary prerequisites to the grant. And if it appears from the papers and records of the office in evidence, that the statutory requirements have not been complied with, it is within the power of a court, and its plain duty, to hold the patent to be void. Such was the doctrine announced by Judge Hall in the case of Ransom v. Mayor, etc., of New York [Case No. 11,573]. The learned judge says: "Things specified in this section (6th section of the act of 1836) are prerequisites to the granting of a patent, and unless these prerequisites are complied with, a party sued for an infringement of the patent may show that they have not been complied with, and in that mode defeat the action of the supposed inventor." The soundness of this doctrine can not be successfully controverted. It would be straining the doctrine of presumptions in favor of the legality of the acts of a public officer to an unreasonable extent, to hold that a patent is legal and valid where the records and papers of the office show conclusively that essential statutory provisions had been disregarded.

Now, it is clear there were at least two of the important requisites of section 13 of the act of 1836, before quoted, in relation to reissues, which were not complied with by the complainant in obtaining his reissues. (1) He does not aver in his bill, or make oath in his application, nor does it otherwise appear, that Steadman's invention as patented, was "inoperative or invalid," in the sense of those terms as used in the statute. The allegation in the bill is merely "that the description and specification of the said patented invention being defective and insufficient * * * said patent was by your orator returned," etc. Nor did the complainant in his application for a reissue make oath that the patent to Steadman was "inoperative or invalid" for any reason whatever. He swears "that he verily believes that by reason of an insufficient or defective specification, the aforesaid letters patent granted to T. S. Steadman, is not fully valid and available to him." The statute requires as a condition on which a reissue shall be granted, that the original patent shall have been "inoperative or invalid by reason of a defective or insufficient description or specification, if the error has or shall have arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention." The complainant did not make the oath required by the statute; nor was there any evidence before the commissioner of patents proving that the Steadman patent was "inoperative or invalid," for the reason stated in section 13, or for any other reason. And the reason why this oath was not made, and could not be made, is most obvious from the evidence before the court. The patent to Steadman was not "inoperative or invalid" by reason of a defective or insufficient specification. The machine described by him, with the improvements claimed as his invention, was just as efficient for the purpose for which it was designed, viz: the "harvesting of clover and grass seed," as from the description of his mechanical devices it was capable of being. That it failed in its practical operation for that purpose, was not owing to any "defective or insufficient description or specification," but to inherent defects or infirmities in the structure, which prevented it from being practically useful for the purpose for which it was invented. And that it was not owing to any defect in his description or specification is proved by the fact that Steadman, after the machine failed on trial, never made an effort to perfect it by an amended specification. It is moreover apparent from the fact that the machine as described in the complainant, Whitely's, specification, upon his application for a reissue, was no more available as a harvester of clover and grass seed than when constructed according to Steadman's specification. There is no pretense that the complainant, after the reissues to him, ever constructed a machine according to his specification, or authorized any other person to make, use, or vend the machine under his

patent. In fact, the presumptions, as will be noticed hereafter, are strong that he never intended to use the patented machine.

It is clear, therefore, that these reissues, for the reason stated, were not granted in accordance with the statute. The Steadman patent was not inoperative or invalid, in the sense of the statute; and the oath of the complainant that it was not "fully valid and available to him," is not the equivalent for the oath required by law. The statute embraces only the right to a reissue where from an unintentional error in the description of the invention, the patent is wholly "inoperative or invalid." It is not enough that the applicant for the reissue should swear, or prove, that the patent is not fully valid and available to him. This does not meet the clear and explicit requisition of the statute; and it was an excess of authority on the part of the commissioner to grant a patent upon such an oath.

There is, however, another fatal objection to these reissues based on the fact proved by the exhibits in the case, that no oath appears to have been made to the specification on which the reissues were granted. Neither Steadman, the patentee, nor the complainant, as assignee, has made such oath. The facts in relation to the application for the reissue have already been referred to. They appear fully from the deposition of Peck, the patent office examiner, and the fac simile copies of the papers in the patent office. From these the proof is clear that the original specification was prepared by the complainant and sworn to in Ohio, before a justice of the peace of that state. It was forwarded to the patent office, and upon examination was found to be, substantially, an application for a patent for a grain harvester and mower, instead of an implement for gathering clover and grass seed as before noticed. The description of the alleged improvements was so palpably variant from the invention described by and patented to Steadman, that the examiner rejected it and ordered the entire paper to be canceled, and every part of it was stricken out except the formal beginning and the conclusion. A new specification was then prepared as the basis of the reissues applied for, and filed as a substitute for the original. And the description of the improvement, as contained in the substitute, was, in many essential particulars, different from the original. But the substituted specification was not sworn to, either by the patentee or the assignee. I shall not here examine or decide whether, upon an application by an assignee for a reissue, the patentee being alive and no reason being shown why he did not verify the specification by his oath, the oath of the assignee is a compliance with the statute. It is not controverted that the oath either of the assignee or patentee is required by the statute and by the rules of the patent office. And it results clearly, that the disregard of this statutory requirement invalidates these reissues. There are other exceptions to the reissues, on the ground that the prerequisites of the statute have not been complied with, which I do not think it necessary to notice or discuss.

The important question whether these reissues were fraudulently obtained, and therefore void, is yet to be considered. If there is any doubt as to the correctness of the conclusion just announced on the question discussed, it would seem there could be none as to the fraudulent purpose of the complainant in procuring the assignment from Steadman, and in his application for reissues based on his patent. I do not propose the discussion of all the points in the case, connected with the question of fraud. There are some general aspects of the subject that seem entirely conclusive. There can be no doubt that the complainant procured the assignment from Steadman with full knowledge that the machine for improvements, on which the patent issued, was a machine for harvesting clover and grass seed, as the name in the patent indicated, and for nothing else. It may also be presumed that he was aware that for that purpose it was practically unavailable. The testimony on this point has been referred to in a previous part of this opinion, and need not be repeated here. The evidence is clear, that upon actual trial, Steadman's machine failed to answer the expectations of the patentee. No more than three of the machines were ever made by Steadman; and the proof is, that the last trial of the machine took place in 1853 or 1854, when it was wholly abandoned as worthless.

Until the year 1860, it seems to have been, if not among the lost arts, at least among the lost things of earth. The complainant, by means not proved in the case, obtained knowledge of the existence of Steadman's patent, and in 1860, obtained an assignment. What consideration he paid, if any, does not appear. It may be presumed it was merely nominal. But the complainant was doubtless aware that although Steadman's invention was worthless for the only purpose for which it was intended, the patent was nevertheless valid, and could be assigned in law. There is no reason to suppose that the complainant, in procuring the assignment, intended to avail himself of the machine as a clover-seed and grass harvester. This is apparent from the fact that he has not constructed, or authorized others to construct, the machine since the assignment. The irresistible inference, therefore, must be—and this inference is sustained by his subsequent conduct—that his intention was to surrender the patent, and by some artful change in the description of the machine, some additions to the devices described and claimed by Steadman, to obtain reissues enlarging the scope and operation of his invention, and thus to metamorphose the machine into a grain harvester; or, if that failed, so to

change the specification as to cover certain elements and combinations then used, or to be used, in grain harvesters and mowers, or other machines; and thus to lay those constructing, vending, or using such machines, under contribution to him as infringers of his reissued patents. If such was the purpose of the complainant, his conduct was tainted with fraud from the beginning. And in confirmation of this, I quote the following from the opinion of the supreme court in the case of Brooks v. Fisk, 15 How. [56 U. S.] 220: "It is deemed proper to remark that the fact of procuring a patent for a new and useful machine in 1845, under the assumption of a reissue, which was not useful as patented in 1828 for want of feed and pressure rollers, now used as alleged in defense, would present a question of fraud committed on the public by the patentee, by giving his reissued patent of 1845 date as an original discovery made in 1828, thereby overreaching similar inventions made between 1828 and 1845."

Now, it is clear that the facts do show that it was at first the design of the complainant, by means of reissued patents to be obtained under Steadman's patent for improvements in a clover and grass-seed harvester, to acquire an exclusive right for an operative and practical grain harvester and mower, which should date back to the emanation of Steadman's patent of 1854; and thus make all liable as infringers who, after that time, had used any of the parts or elements of the combinations covered by his reissues. It clearly appears that in the complainant's original specification accompanying his application for reissues, such was his design. In that he designates Steadman's invention as a "harvesting machine," and he describes devices, and uses terms and forms of expression only applicable to such a machine. As already stated, this specification was rejected by the examiner of patents, and for reasons contained in his letter of April 19, 1860, in which he informs the complainant that "the description enlarges the scope of the invention so as to embrace other distinct improvements invented and subsequently patented by others." This was the exact case put by the supreme court in the case of Brooks v. Fisk, before referred to, as constituting a fraudulent reissue.

It can not be denied that this was a very bold attempt, through a reissue, to practice a fraud on the patent office and the public. And as showing the animus of the complainant, it throws a cloud over his conduct as connected with this transaction. Though foiled in his purpose of metamorphosing the Steadman invention into a reaper and mowing machine, and getting reissued patents covering devices and combinations that never entered into Steadman's brain, and which he did not therefore claim, and some of which had been previously patented to other persons, he made another attempt by other means, to accomplish his purpose. His first application being rejected as wholly inadmissible, he filed another with the hope and intention, by an artful description of Steadman's patented invention, in which his claims were to be ingeniously modified, enlarged, and misstated, to convince the patent office that his claim to a reissue was for the "same invention," to obtain patents substantially embracing some of the important elements and devices of a grain harvester, then well known and extensively used. The object was palpable, namely: to subject those making, selling, or using such harvesters, or other machines with similar devices and combinations, to liability as infringers of his reissued patents. This is what Judge Grier, in delivering the opinion of the supreme court in the case of Burr v. Duryee, 1 Wall. [68 U. S.] 580, very aptly says is entitled to rank "inter ingenuas artes." Strangely enough he succeeded in procuring from the patent office no less than three reissued patents for alleged separate parts of Steadman's simple claims to improvements in a machine for gathering clover and grass seed by cutting, or, more properly, pulling off the seed heads and depositing them in a box forming a part of the machine.

It is not proposed to analyze critically the claims covered by Steadman's patent, as contrasted with those contained in the complainant's reissues. It will be enough to state them to convince any one that they are not identical and do not describe the same invention. It has been before noticed, that the two claims of Steadman's patent were: "First: The arrangement of the cutters in combination with the comb, operating in the manner and for the purpose described. Second: The rake S in combination with the cutters described." The third claim, which related to the devices for raising and lowering the machine when in motion, was rejected at the patent office as wanting novelty, and being covered by other patents. It is plain from this—and such is the evidence—that these claims pertained to a clover and grass-seed harvester, and could not be used for any other purpose. But these simple claims are swelled into large dimensions under the ingenious manipulations of the complainant. In the reissue 985 he says: "What is claimed as the invention of the said Thomas S. Steadman, and is desired to be secured by letters patent, is the main frame or box A, which carries the pinion which drives the cutters, in combination with the arm or supplementary frame J, provided with the axle t, and the main wheel and gearing as described for the purposes specified. I also claim the arm or supplementary frame in combination with the master wheel and gearing when said arm or supplementary frame is so connected with the main frame as to vibrate from and around the pinion shaft, substantially as shown and described for the purpose set forth."

And in his claim for reissue 986, the complainant says: "What is claimed as the invention of the said Thomas S. Steadman, and is desired to be secured by letters patent is, in combination with the main frame or box A, an arm or supplementary frame F, on which is formed or secured the master-wheel axle, the employment of a retaining arc H, or its equivalent, the whole constructed or arranged in such a manner that the main frame or box, and arm or supplementary frame with its master-wheel axle, will be held in parallel planes, relatively to each other while they are moving up and down, substantially as and for the purposes herein set forth." There was a third reissue for an other part of Steadman's invention not in controversy, and which need not be set forth.

Now, the proof is clear, that the improvements in the clover and grass-seed machine, as patented to Steadman, and the entire machine with these improvements, was wholly incapable of performing the functions of a grain harvester or mower. The testimony of the witness Peck, and other witnesses, is explicit on this point. Yet the complainant in his specifications and claims, connected with his reissues, has described and claimed as the invention of Steadman, devices and combinations never conceived of by him. And this obviously for the fraudulent purpose of including devices and combinations used in perhaps all the grain harvesters and mowers in the country. I do not think it important minutely to compare the claims and devices of Steadman, as patented to him, and those described and claimed by the complainant as the basis of his reissues. That there is no substantial identity between them sufficiently appears from reading the two. It is moreover apparent from the fact that Steadman, while the owner of his patented invention, never claimed or pretended that it was infringed by any grain harvester or mower then known. From the date of his patent in 1854 until the reissue to the complainant in 1860, no such claim or pretense was set up by Steadman. Yet, the complainant now, under the sweeping reach of his claims, and the allegation that they include Steadman's invention, and nothing more, has sued a vender of the Kirby grain harvester, as an infringement of his reissue. It seems clear to the court that this is a fraudulent abuse and perversion of the statute regulating and allowing reissues.

It is gratifying to know that the supreme court of the United States have evinced, in their late decisions, a laudable determination to arrest the abuses and frauds which are of such frequent occurrence under the statute allowing reissued patents. In the case of Burr v. Duryee, 1 Wall. [68 U. S.] 577, Judge Grier, in giving the opinion of the court, says:

"The surrender of valid patents, and the granting of reissued patents thereon, with expanded or equivocal claims, where the original was clearly neither 'inoperative or invalid,' and whose specification is neither 'defective or insufficient,' is a great abuse of the privilege granted by the statute, and productive of great injury to the public. This privilege was not given to the patentee or his assignee, in order that the patent may be rendered more elastic or expansive, and therefore more 'available' for the suppression of all other inventions."

These remarks seem to apply with great force to the present case. No one can claim that under the original patent to Steadman there is a single element described by him, that is infringed by the Kirby grain harvester, and if by the "elastic or expansive" power of his reissues, he has succeeded in bringing that machine, and other similar machines, within the scope and operation of his patents, it is an abuse of the right of a reissue, equivalent to a positive fraud.

For the reasons stated, the complainant's bill must be dismissed. I have not thought it necessary to inquire into, or pass any judgment upon, the issues made in regard to the questions of infringement or novelty. The evidence on these points is voluminous, and in some respects conflicting. I have examined it carefully, but am not prepared to give a definite opinion. Though I may say, that, as to the infringement alleged, the evidence at least renders it exceedingly doubtful whether it is made out.

I have only to add, in conclusion, that I am unwilling, unless the facts and the law imperatively demand it, to put into the hands of the complainant the opportunities which a decree in his favor would afford, of pursuing and annoying others for the alleged infringement of the rights secured to him by his reissued patents. I can not shut my eyes to these results. This bill asks for an injunction against the defendant to restrain him from selling the Kirby harvester, and for an account of profits. A decree against him as a mere vender of that machine, except as to costs, would not probably affect his interests to any very serious extent. But can it be doubted that with a decree in his favor in this case, establishing the legality and validity of his reissues, the complainant would at once proceed against manufacturers, and all who vended or used the machine, unless they would pay tribute to him. Those who did not choose to submit to his terms, would be visited with injunctions, and otherwise annoyed, greatly to their injury and that of the public. The Kirby harvester is a very popular and useful labor-saving agricultural implement, and is extensively manufactured in various parts of the country. I can not consent to render a decree based on a claim of such doubtful equity as that asserted by the complainant, which in its results may lead to the stoppage of these manufactories, and involve their proprietors in the most vexatious and expensive litigations. I am unable to perceive that the complainant has

made out a case of such clear and palpable equity, as will justify a decree involving such consequences.

[On appeal to the supreme court the above decree was affirmed. 7 Wall. (74 U. S.) 685.]